IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-88

No. 110A19-2

Filed 15 July 2022

IN THE MATTER OF: K.N.

Appeals pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 29 March 2021 by Chief Judge Teresa H. Vincent in District Court, Guilford County. This matter was calendared for argument in the Supreme Court on 1 July 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Mercedes O. Chut for petitioner-appellee Guilford County Department of Health and Human Services.*

*Erica M. Hicks for appellee Guardian ad Litem.*

*Jeffrey William Gillette for respondent-appellant father.*

HUDSON, Justice.

Respondent-appellant appeals from the trial court's 29 March 2021 order terminating his parental rights asserting violations of Rules 52 and 63 of the North Carolina Rules of Civil Procedure. Upon review, we vacate the order of the trial court and remand for a new hearing.

## I.    Factual and Procedural Background

This is the second time our Court has heard an appeal in this case. For a thorough discussion of all background material, we refer the reader to our prior opinion. *In re K.N.*, 373 N.C. 274 (2020). Here, we discuss only those background and procedural facts relevant to this appeal.

Respondent is the biological father of Keith.[1] On 6 February 2017 the Guilford County Department of Health and Human Services (DHHS) filed a petition alleging that Keith was neglected and dependent. On 21 July 2017 the district court found Keith to be neglected and dependent. On 15 March 2018 DHHS filed a petition to terminate respondent's parental rights. On 28 November 2018 the district court terminated respondent's parental rights to Keith.

In its termination order, the court highlighted respondent's incarceration and pending criminal charges; his housing situation; his "diluted" and delayed drug tests; his lack of steady income; and his alleged failure to complete a Domestic Violence Intervention Program.

Respondent appealed the termination of his parental rights. *In re K.N.*, 373 N.C. at 277. On 24 January 2020 we vacated the district court's termination order and remanded the case for further proceedings. *Id.* at 285. Our Court held that some of the findings in the district court's order—specifically, that respondent had not

---

[1] Pseudonym used to protect the child's identity.

completed a required Domestic Violence Intervention Program—were not supported by the evidence. *Id.* at 281. We further held that the remaining findings of fact enumerated in the district court's order were insufficient to support a determination that respondent neglected Keith. *Id.* at 284. In fact, many of the district court's written findings indicated that respondent was complying with his case plan. We observed that "[t]he only factual finding that directly addresses respondent's ability to care for Keith" is the finding that respondent was incarcerated and awaiting trial at the time of the termination hearing. *Id.* at 282. Our case law squarely establishes that "incarceration, by itself, cannot serve as clear, cogent, and convincing evidence of neglect." *Id.* at 282–83. Only when the court finds that the unique circumstances, beyond the mere fact of incarceration, suggest neglect is likely, can this fact weigh in favor of termination. The district court's order did not reflect this type of analysis, and we so held. *Id.*

¶ 6    At the same time, we noted that "the trial court *could* have made additional findings of fact . . . that might have been sufficient to support" an order terminating respondent's parental rights to Keith. *Id.* at 284. We pointed to other evidence in the record, such as respondent's history of drug abuse, that could potentially weigh in favor of termination. We also noted, as discussed in the paragraph above, that a more detailed analysis of the circumstances of respondent's incarceration might also support termination. But we were clear that any future order terminating

respondent's parental rights would need to be sufficiently supported by "appropriate" findings, additional explanation, or some combination of both. *Id. at* 284–85. Thus, we explicitly noted that the trial court, on remand, "shall have the discretion to determine whether the receipt of additional evidence is appropriate." *Id.* at 285.

¶ 7 On remand, the matter was assigned to a substitute judge. Tragically, the original district court judge, the Honorable Judge H. Thomas Jarrell, had passed away in August 2019. In a pre-trial conference following remand, respondent's newly appointed attorney initially objected to assigning a substitute judge to revise a vacated order based on evidence the substitute judge did not hear. However, on 18 September 2020, all parties agreed that the matter could be assigned to Chief District Court Judge Teresa H. Vincent per Rule 63.

¶ 8 On 5 January 2021, Chief Judge Vincent heard from the parties at a pre-trial conference. In a written order signed on 15 January 2020 and filed on 20 January 2020, the Chief Judge indicated her intent to review the record, the trial transcripts, and any proposed findings of fact that the parties wished to submit for consideration. While Chief Judge Vincent acknowledged that she could, in her discretion, reopen the evidence, she did not hold any additional hearings.

¶ 9 On 29 March 2021 Chief Judge Vincent issued a new order finding that Keith was neglected and terminating respondent's parental rights. This new order directly addressed many of the deficiencies in the first termination order that our Court had

identified. For example, the old termination order only briefly touched on respondent's criminal record: "[Respondent] was to cooperate with the terms of his probation. [Respondent] was to resolve his pending criminal charges and not incur any new criminal charges. [Respondent] has violated his probation and his case plan by incurring new charges." In contrast, the new termination order analyzed respondent's criminal history at length, and explained why this history supported termination:

> [Respondent] has a history of engaging in a criminal lifestyle that has prevented him from providing an appropriate and safe home for the juvenile in the past. Given [respondent's] criminal record, probation violations, and lack of progress in resolving his involvement with the criminal justice system, there is a high likelihood that [Keith] would be neglected if he were returned to [respondent's] care.

In another example, the old termination order simply noted that respondent had submitted several "diluted" drug tests, and that on one occasion he had delayed taking a drug test. The new termination order went much further:

> [Respondent] has a long history of substance abuse problems, as demonstrated by his many convictions on drug-related charges and the diagnosis by his former counselor Mr. Albert Linder of alcohol use disorder (severe), cocaine use disorder (severe in full remission), and marijuana use disorder (mild to moderate), as well as anxiety disorder and post-traumatic stress disorder. [Respondent's] dilatory tactics with respect to the random drug screening required by his case plan indicates lack of genuine progress in overcoming substance abuse problems. By way of example, on three separate occasions, in June,

July, and August of 2018 [respondent] submitted diluted drug screens for which he did not provide a plausible explanation. Ultimately [respondent] waited three days before providing another (negative) drug screen in August of 2018. Albert Linder, [respondent's] therapist, testified that [respondent's] recent DUI charge may indicate a relapse into drug use. The Court finds Mr. Linder's testimony to be credible. [Respondent's] pattern of providing diluted drug screens and postponing further drug testing indicates that he is not cooperating with the Department, is attempting to manipulate the testing, and has used illicit substances. Given his many convictions for crimes involving drugs or drug paraphernalia, [respondent's] substance abuse is intertwined with his criminal recidivism and lifestyle. Therefore, substance abuse has negatively impacted [respondent's] life and ability to care for the juvenile. In spite of superficial progress with his case plan, as a result of his inability to demonstrate sustained sobriety, [respondent's] neglect of the child is ongoing, and there is a high likelihood of repetition of neglect should the Court return the juvenile to [respondent's] care.

Respondent appeals the Chief Judge Vincent's 29 March 2021 order terminating his parental rights.

## II. Analysis

On appeal, respondent argues that the trial court's order terminating his parental rights was null and void because Chief Judge Vincent, as a Rule 63 substitute judge, lacked authority to make new, dispositive findings of fact under Rule 52. Respondent claims that the trial court's reliance on Rule 63 is misplaced, as that rule does not permit a substitute judge who did not hear the case to perform non-ministerial acts like making new findings of fact and reviving a previously vacated

order. Respondent asks this Court to vacate the 29 March 2021 termination order and to remand the matter for a new trial. Because we conclude the trial court did so err, we vacate the judgment of the trial court and remand for a new hearing on the termination of respondent's parental rights.

## A. Standard of Review

¶ 12 Respondent argues the trial court failed to comply with Rule 52 and Rule 63 of the North Carolina Rules of Civil Procedure. This Court recently set out the standard of review for compliance with the Rules of Civil Procedure:

> The North Carolina Rules of Civil Procedure are part of the General Statutes. Accordingly, interpreting the Rules of Civil Procedure is a matter of statutory interpretation. A question of statutory interpretation is ultimately a question of law for the courts. We review conclusions of law de novo.

*In re E.D.H.*, 2022-NCSC-70, ¶ 10 (cleaned up). "We review a trial court's adjudication under N.C.G.S. § 7B-1111 to determine whether the findings are supported by clear, cogent, and convincing evidence and the findings support the conclusions of law. The trial court's conclusions of law are reviewable de novo on appeal." *In re S.C.L.R.*, 378 N.C. 484, 2021-NCSC-101, ¶ 15 (cleaned up).

## B. Preservation

¶ 13 As an initial matter, we note that DHHS and the Guardian ad Litem argue that respondent's arguments based on Rules 52 and 63 are waived because respondent failed to raise them before the trial court below. Rules 52 and 63, however,

impose mandates on the trial court to act. As we have stated, "[i]t is well established that when a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial." *State v. Chandler*, 376 N.C. 361, 366 (2020). Because Rules 52 and 63 impose statutory mandates, and because failure to ensure the finder of fact has personal knowledge of the case prejudices respondent, we conclude that respondent's arguments are preserved.

## C. Merits of Respondent's Arguments

We now consider the merits of respondents' arguments under Rule 52 and Rule 63. Rule 52 of the North Carolina Rules of Civil Procedure states that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C.G.S. § 1A-1, Rule 52(a)(1) (2021).

Rule 63 provides as follows:

> If by reason of death . . . a judge before whom an action has been tried or a hearing has been held is unable to perform the duties to be performed by the court under these rules after a verdict is returned or a trial or hearing is otherwise concluded, then those duties, including entry of judgment, may be performed:
>
> . . .
>
> (2) In actions in the district court, by the chief judge of the district. . . .
>
> If the substituted judge is satisfied that he or she cannot

> perform those duties because the judge did not preside at
> the trial or hearing or for any other reason, the judge may,
> in the judge's discretion, grant a new trial or hearing.

N.C.G.S. § 1A-1, Rule 63 (2021).

¶ 16    We have recently held that "one of the 'duties to be performed by the court

under these rules,' N.C.G.S. § 1A-1, Rule 63, is finding the facts, stating the

conclusions of law, and directing the entry of judgment pursuant to Rule 52." *In re

E.D.H.*, 2022-NCSC-70, ¶ 13. Accordingly, we summarized our caselaw construing

Rule 52 and Rule 63 together as follows:

> [T]his Court has interpreted Rules 52 and 63 together to
> provide that a substitute judge cannot find facts or state
> conclusions of law in a matter of which he or she did not
> preside. Conversely . . . if [the trial court judge] made the
> findings of fact and conclusions of law that appear in the
> order before retiring and [the] Chief Judge . . . did nothing
> more than put his signature on the order and enter it
> ministerially, the order is valid.

*Id.* at ¶ 13 (cleaned up).

¶ 17    Under the general rule, a substitute judge who did not preside over the matter

lacks the power to find facts or state conclusions of law. In *In re C.M.C.*, for instance,

this Court considered whether two orders terminating parental rights were valid. The

initial order at issue was signed by a different judge than the one who presided over

the hearing. That order was subsequently vacated and a second order was entered

that was signed by the same judge who conducted the hearing. 373 N.C. 24, 25–27

(2019). We held "that the initial termination orders signed by [the substitute judge]

were . . . a nullity." *Id.* at 28. Nevertheless, we ultimately affirmed the trial court because the trial court's subsequent actions issuing a new order corrected the error introduced by the improperly signed order. *Id.* at 29.

¶ 18     Here, the substitute judge made findings of fact and conclusions of law drawn from those findings in the 29 March 2021 termination order despite not having presided over the original trial. This action contravenes the requirements of Rule 52 and Rule 63, which implicitly prohibit a substitute judge from doing so. Under these rules and *In re C.M.C.*, we must conclude the order is "a nullity." *Id.* at 28.

¶ 19     In *In re E.D.H.*, our most recent case addressing Rules 52 and 63, we reaffirmed the approach of *In re C.M.C.* "provid[ing] that a substitute judge cannot find facts or state conclusions of law in a matter over which he or she did not preside," *In re E.D.H.*, 2022-NCSC-70, ¶ 13 (citing *In re C.M.C.*, 373 N.C. 24, 28 (2019)), this Court affirmed a substitute judge's signing and entering an order where the findings of fact and conclusions were made by the retired judge. *Id.* at ¶ 15. However, in that case, the Court held that the act was permitted by Rules 52 and 63 because it was ministerial and because a presumption of regularity attached to the act. *Id.* The Court specifically noted the respondent failed to show that the substitute judge "signed the order despite not knowing whether [the retired judge] made the findings of fact and conclusions of law that appear in it." *Id.* at ¶ 17.

¶ 20        Unlike *In re E.D.H.*, this case does not fall into the class of cases where the substitute judge acted ministerially, merely signing an order, for which findings of fact and conclusions had been made by the unavailable judge. Rather, here, Chief Judge Vincent found further facts beyond those in the vacated order, despite not hearing any of the evidence. Moreover, even where her 29 March 2021 order reapplied facts found by the deceased judge, that was not in keeping with Rules 52 and 63, because the original order was fully vacated by this Court in our judgment and mandate, rendering it a nullity. Accordingly, Chief Judge Vincent engaged in distinctly judicial and not ministerial action by making findings of fact and conclusions of law despite not personally hearing the evidence, contravening Rules 52 and 63 as interpreted by this Court in *In re C.M.C.* and *In re E.D.H.*

¶ 21        Nevertheless, DHHS argues in its brief that *In re C.M.C.* does not apply to this case because the opinion does not mention Rule 63 and the two decisions of our Court of Appeals relied on by this Court in that decision were issued before Rule 63 was amended in 2001. DHHS argues this amendment to the rule resulted in a change in its meaning such that, under the present version of the rule, a substitute judge may enter findings of fact and conclusions of law on behalf of the original, unavailable judge. DHHS notes that originally Rule 63 read in pertinent part as follows:

> If by reason of death, . . . a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules *after a verdict is returned or findings of fact and conclusions of law are filed,*

> *then those duties may be performed. . .*
>
> . . .
>
> (2) In actions in the district court, by the chief judge of the
> district, . . .

N.C.G.S. § 1A-1, Rule 63 (1999) (emphasis added). The present version of Rule 63, which now provides that a substitute judge may act "after a verdict is returned or a trial or hearing is otherwise concluded," was enacted 18 August 2001 by S.L. 2001-379, § 7, 2001 N.C. Sess. Laws 1222, 1236. DHHS argues that, unlike the original version of the language, nothing in the current version of Rule 63 bars the substitute judge from entering findings of fact and conclusions of law, constrained only by the substitute judge's own discretion.

¶ 22        We are not persuaded by this argument. DHHS effectively asks this Court to overrule our caselaw on Rule 63 drawing a line between "ministerial" and "judicial" functions because the amendment signaled a change in the functions which a substitute judge is permitted to perform. But based on the plain meaning of the words, the more logical interpretation is that the legislature modified the rule to expand the time in a case at which a substitute judge might step in from the conclusion of a trial or hearing to entry of judgment, and not merely from the filing of findings of facts or conclusions of law to entry of judgment. Accordingly, we conclude that the amendment to Rule 63 by Session Law 2001-379, § 7 did not modify the functions which a substitute judge is permitted to perform.

¶ 23   Furthermore, it makes no difference to our analysis that this Court specifically provided in our remand instructions that the trial court "shall have the discretion to determine whether the receipt of additional evidence is appropriate." *In re K.N.*, 373 N.C. at 285. That instruction did not contemplate the death or unavailability of the original district court judge and, in particular, did not override the need to comply with the Rules of Civil Procedure on remand, including the requirement of Rules 52 and 63 that a substitute judge not find facts or enter conclusions based on evidence he or she did not hear. Accordingly, with the original order vacated, the proper action for the substitute judge was to order a new hearing.

## III.   Conclusion

¶ 24   We conclude the trial court erred in entering new findings of fact and conclusions of law without conducting a new hearing. The function of finding facts is specific to the judge who presides over a non-jury civil trial or hearing, as only that judge has the opportunity to observe the witnesses and weigh the evidence. We hold a substitute judge may not make new factual findings or conclusions of law under Rule 52 and Rule 63. Accordingly, we vacate the 29 March 2021 order of the trial court terminating respondent's parental rights and remand for a new hearing.

VACATED AND REMANDED.